# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-20187-STA |
| | ) | |
| PATRICK GLADNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Patrick Gladney's Motion to Suppress (D.E. # 20) filed on September 3, 2013. This matter was referred to the United States Magistrate Judge for Report and Recommendation. Pursuant to the order of reference, the Magistrate Judge conducted a suppression hearing on October 31, 2013. Following the hearing, the Magistrate Judge issued a ruling from the bench recommending that the Motion to Suppress be denied.[1] On November 19, 2013, Defendant filed timely objections (D.E. # 36) to the Magistrate Judge's Report. The government responded to the objections (D.E. # 47) on February 3, 2014. Therefore, this matter is now ripe for determination.[2] For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **ADOPTED**,

---

[1] A transcript of the Magistrate Judge's oral Report and Recommendation was prepared and entered on the docket (D.E. # 34) on November 6, 2013.

[2] In his objections to the Report and Recommendation, Defendant stated an intention to file supplemental objections upon receipt of the full transcript of the suppression hearing. However, Defendant never supplemented his objections.

1

and Defendant's Motion to Suppress is **DENIED**.

## BACKGROUND

On May 30, 2013, a federal grand jury indicted Defendant with one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and one count of possession of marijuana with the intent to distribute in violation of 18 U.S.C. § 841(a)(1). In his Motion to Suppress, Defendant argues that the officers lacked any reasonable suspicion to detain him, and as such the Court should suppress the evidence obtained as a result of the unlawful detention. At the suppression hearing, the government called Officer Anthony Campbell of the Memphis Police Department ("MPD"). The Magistrate Judge credited Officer Campbell's testimony and proposed that the Court adopt this testimony in its entirety as the findings of fact. The Magistrate Judge "had the opportunity to view the witness on the stand and assess his demeanor"[3] and thus was "in the better position to assess the credibility of witnesses" he heard during the evidentiary hearing.[4] "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment."[5] Having reviewed the

---

[3] *Peveler v. United States,* 269 F.3d 693, 702 (6th Cir. 2001); *see also Moss v. Hofbauer,* 286 F.3d 851, 868 (6th Cir. 2002).

[4] *United States v. Woodruff*, 830 F. Supp. 2d 390, 402 (W.D. Tenn. 2011) (Mays, J.) (quoting *United States v. Robinson,* No. 1:07–CR–1, 2007 WL 2138635, at *1(E.D. Tenn. July 23, 2007)).

[5] *United States v. Brown,* No. 1:07–CR–9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007). *See also United States v. Tyler*, 2:10-CR-20124-STA, 2011 WL 2551177 (W.D. Tenn. June 27, 2011); *United States v. Tuggle,* No. 2:10–cr–20042–JPM–tmp, 2011 WL 692812, at *1 (W.D. Tenn. Feb. 18, 2011) (quoting *United States v. Freeman,* No. 08–5677, 2010 WL 4244268, at *9 (6th Cir. Oct. 19, 2010)).

testimony received by the Magistrate Judge, the parties' briefs, and the entire record of the case, the Court hereby adopts the Magistrate Judge's proposed findings of fact.

On or about December 17, 2012, Officer Campbell was in his marked patrol car with his partner Officer Davis, patrolling the area of the Corner Grocery Store ("the store"), located at 4232 Winchester Road in Memphis, Tennessee. Officer Campbell was aware that the area was a high-crime area associated with drugs and shootings. Officer Campbell himself had made arrests in the area. There also was a loitering problem at the store itself, causing the management to post a "no loitering" sign. On the day in question, Officer Campbell was in possession of a list known as an authorization of agency.[6] The list contained the names of individuals provided by area businesses, including the Corner Grocery Store, reporting incidents of loitering and customer harassment. Officer Campbell observed two men standing outside of the store close to the posted "no loitering" sign. The men had their feet "kicked up" leaning against the building and did not appear to have any reason to be at the store. Officer Campbell stopped to determine whether either of the men was on the authorization of agency list. Officer Campbell pulled up in his patrol car and instructed the men to "come here" or "y'all come here for a minute," or words to that effect. One of the men complied and walked toward Officer Davis. The other man, later identified as Defendant Patrick Gladney, did not comply and instead bent down to tie his shoe. Defendant then turned and walked away from the officers. Officer Campbell then called to Defendant and stated "not that way; this way." Defendant then immediately took off running. Officer Campbell pursued him. At some point in the chase,

---

[6] Officer Campbell testified at the hearing that an authorization of agency was a "list of people who are a problem for the business [like the Corner Grocery Store] and they are not supposed to be on the property." Suppression Hr'g Tr. 11:23–25. Officer Campbell went on to explain that the list is compiled with input from business owners who have had problems with specific individuals. *Id.* 12:9–12.

3

Defendant fell to the ground, and a gun fell out of his pants. The gun landed about two to three feet away from where Defendant fell. Officer Campbell thereafter subdued Gladney and placed him in handcuffs. When Officer Campbell asked Defendant why he fled, Defendant answered that he had warrants.

Defendant has objected to the Magistrate Judge's proposed findings of fact but only to the findings about Officer Campbell's general demeanor during the encounter. According to Defendant, the Magistrate Judge's Report implies that Officer Campbell made a "benign" request for Defendant and the other man to talk with the officers. Defendant highlights a number of additional facts to suggest that Officer Campbell behaved more forcefully and thereby detained Defendant without reasonable suspicion. For example, Defendant emphasizes that Officer Campbell arrived on the scene in a marked police car and was armed as he approached the men. As for his tone of voice, Defendant asserts that Officer Campbell testified his language was authoritative and he spoke loudly. And after Defendant initially began to walk away, Officer Campbell actually said, "I did not tell you to go that way, I said come here." Defendant also notes Officer Campbell's opinion that Defendant was not free to leave.

The Court finds that Defendant has not actually objected to the Report's factual findings or disputed Officer Campbell's testimony about the encounter. Rather Defendant has argued additional facts from Officer Campbell's testimony to support his own characterization of the police conduct during the encounter. Defendant's objection then is that the Magistrate Judge did not include the additional facts in his Report. It is true that Officer Campbell made the scene in a marked unit. It is also true that Officer Campbell offered his personal opinion that Defendant was not free to leave

4

after the officers had summoned him.⁷ Therefore, the Court adopts these additional facts as part of its findings for purposes of the Motion to Suppress.⁸ However, the Court finds that not all of the facts Defendant cites in his objections are actually supported in the record. Defendant cites no evidence for his characterization of Officer Campbell's tone of voice or demeanor. In fact, Officer Campbell actually denied that he spoke "aggressively" to Defendant.⁹ Defendant also fails to cite any evidence to show that Officer Campbell was armed when he initiated the encounter with Defendant. Therefore, the Court declines to consider these contentions as part of its assessment of the Motion to Suppress.

Based on the findings in the Report, the Magistrate Judge has recommended that Defendant's Motion to Suppress be denied. The Magistrate Judge reasoned that the narrow issue presented was whether Defendant was ever seized for purposes of the Fourth Amendment prior to his flight from the officers. The Magistrate Judge concluded that he was not. The proof showed that there were only two officers in one police vehicle on the scene in this case, and neither officer physically

---

⁷ *Id.* at 23:4–10. Officer Campbell also testified that the other individual, who did accede to the officers' instructions, was not free to go until the officers had determined who he was and whether his name was on the authorization of agency list. *Id.* at 19:1–11. Officer Campbell explained that if an individual's name did not appear on the authorization of agency list, the individual would simply receive a warning about "hanging out" and was then free to go. *Id.* at 14:2–9. Officer Campbell also testified that Defendant's name was not on the list. *Id.* at 21:18–20.

⁸ The Magistrate Judge did not recite these facts in his Report, apparently because the Magistrate Judge concluded that Defendant never actually submitted to the officers' show of authority. Without a submission to authority, so the Magistrate Judge's reasoning goes, Defendant was not seized or detained as a result of the officers' conduct. Seen from that perspective, the fact that Officer Campbell was in a marked unit or that he believed Defendant was not free to simply walk away did not figure into the Magistrate Judge's analysis.

⁹ Suppression Hr'g Tr. 15:22–16:1.

restrained Defendant. More importantly, Defendant never submitted to Officer Campbell's command to come over to him. Defendant paused briefly to tie his shoes and then began to walk away. When Officer Campbell spoke again to summon Defendant, Defendant broke out into a run to flee the area. The Magistrate Judge relied heavily on the Sixth Circuit's decision in *United States v. Jeter*, 721 F.3d 746 (6th Cir. 2013) and quoted the opinion extensively in his legal analysis. The Magistrate Judge submitted that under these facts a seizure had not occurred and did not occur until Officer Campbell subdued Defendant at the end of the chase. By that point Officer Campbell had observed the firearm fall out of Defendant's pants. As such, Officer Campbell's approach and commands had not seized Defendant in violation of his Fourth Amendment rights. Therefore, the Motion to Suppress should be denied.

In his objections to the Magistrate Judge's conclusions of law, Defendant argues that his case is factually distinguishable from *Jeter*, the case on which the Magistrate Judge relied. The police in *Jeter* arguably had reasonable suspicion of illegal loitering based on multiple observations of possible loitering in front of a store over the course of several hours. By contrast, the officers in the case at bar saw Defendant and another man standing outside the store only one time and immediately pulled up to question them. Defendant further argues that *Jeter* "simply got it wrong" because the opinion "ignores the case law stating that a citizen has a right to ignore police and go about their business where no reasonable suspicion exists that criminal activity is afoot."[10] Defendant contends that he was seized when Officer Campbell made his second, "authoritative" command to stop, that is, after Defendant bent to tie his shoes and then began to walk away. Defendant argues that under those circumstances, no reasonable person would have felt free to terminate the encounter with the

---

[10] Def.'s Objs. to the Mag. J.'s Rep. & Recommendation 7 (D.E. # 36).

6

police. In the absence of reasonable suspicion Defendant was engaged in criminal activity, Officer Campbell's conduct was an unconstitutional seizure. Therefore, Defendant argues that the Court should reject the Magistrate Judge's recommendation and grant the Motion to Suppress.

The United States has responded to Defendant's objections. The government argues that however the parties characterize Officer Campbell's conduct, the fact remains that Defendant never submitted himself to Officer Campbell's show of authority. Defendant ignored the police and ran away. Thus, no seizure occurred. Therefore, suppression would not be appropriate.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a magistrate judge for the purpose of conducting an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the motion.[11] The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."[12] However, the Court is not required to conduct *de novo* evidentiary hearing as part of its *de novo* review.[13] After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge.[14] Moreover, the Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made.[15] Rather, the Court may adopt

---

[11] 28 U.S.C. § 636(b)(1)(B).

[12] § 636(b)(1)(C).

[13] *United States v. Raddatz*, 447 U.S. 667, 674 (1980).

[14] § 636(b)(1)(C).

[15] *Thomas v. Arn,* 474 U.S. 140, 150 (1985).

7

the findings and rulings of the magistrate judge to which no specific objection is filed.[16]

## ANALYSIS

The Court adopts the Magistrate Judge's recommendation and holds that no Fourth Amendment violation occurred in this case. A person is seized within the Fourth Amendment's meaning when an officer "by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied."[17] Defendant argues in his objections that Officer Campbell seized him not when first approached Defendant outside the store but when he commanded Defendant to "not that way, this way." Defendant emphasizes Officer Campbell's tone of voice, authoritative demeanor, and demonstration of authority. All of these facts are certainly relevant to the question of whether the police seized Defendant by "show of authority." In this case, however, Defendant never submitted to the officers' show of authority and actually fled the scene. The unrefuted evidence showed that Defendant immediately ran after Officer Campbell spoke the second time and said "not that way, this way." The Sixth Circuit has held that "a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority."[18] In other words, "there is no seizure without actual submission" and that without actual submission "there is at most an attempted seizure."[19] Therefore, the police's "show of authority" and attempted seizure did not violate Defendant's constitutional rights.

---

[16] *Id.* at 151.

[17] *United States v. Jones*, 673 F.3d 497, 501 (6th Cir. 2012) (citing *Brendlin v. Calif.*, 551 U.S. 249, 254 (2007)).

[18] *United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005).

[19] *United States v. Jones*, 562 F.3d 768, 774 (6th Cir. 2009) (citing *Calif. v. Hodari D.*, 499 U.S. 621, 626 (1991)).

It is true that when Officer Campbell first summoned Defendant to speak with him, Defendant briefly paused to tie his shoe. The Sixth Circuit recently held in *Jeter* that a momentary pause does not constitute a submission to authority.[20] In *Jeter*, the police addressed suspected loitering at businesses by "saturating" the premises with officers, squad cars, and a helicopter in order "to round up the group suspected of loitering" and "prevent any member of the group in the parking lot from fleeing on foot."[21] The officers in one car approached a man on a bicycle, mistaking him for another loitering suspect who was observed at the business earlier in the day.[22] One of the officers rolled down his car window and asked to speak with the man, but the man ignored him and continued to ride his bicycle.[23] The officers used their police car to block the rider's egress from the parking lot, at which point the man stopped.[24] When the officers got out of the car, the man dropped his bicycle and ran from the scene.[25] From these facts, the Sixth Circuit concluded that the man had not submitted to the officers' show of authority, and therefore no seizure had occurred.

As the Magistrate Judge concluded in his Report, *Jeter*'s holding controls this case.

---

[20] *United States v. Jeter*, 721 F.3d 746, 752–53 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 655.

[21] *Jeter*, 721 F.3d at 749–50.

[22] *Id.* at 750. Defendant has argued that *Jeter* is distinguishable because the officers in *Jeter* arguably had more reasonable suspicion that illegal loitering was afoot. However, the Sixth Circuit specifically held that "[t]he fact that Jeter was a black man on a bicycle in a 'high crime area' is not enough to support reasonable suspicion, let alone probable cause, where the facts indicate no laws were being broken or were about to be broken at the time officers converged upon him." *Id.* at 751.

[23] *Id.* at 750.

[24] *Id.*

[25] *Id.*

9

Defendant's brief pause to tie his shoe did not amount to a submission of authority. The Court finds that *Jeter* is materially indistinguishable from the case at bar. In fact, the factual scenario in *Jeter* was even more compelling, in that the police effectively blocked Jeter's path and prevented him from riding off on his bicycle. Here Defendant bent down to tie his shoe and then began to walk away from the officers. When Officer Campbell told Defendant he was going the wrong way, Defendant broke out into a run and fled the scene. There is no evidence Defendant ever spoke to the officers or acknowledged their presence in any way. There is no evidence Defendant acquiesced to the officers' demand to speak with them. Therefore, Defendant's act of tying his shoes before walking (and then running) away from Officer Campbell was not a submission to authority.

As the Sixth Circuit held in *Jeter*, "[w]here there is no seizure, there can be no Fourth Amendment violation.[26] Therefore, no grounds exist to suppress the evidence against Defendant. The Magistrate Judge's Report and Recommendation is **ADOPTED**, and Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 26, 2014.

---

[26] *Id.* at 753 (citations omitted).